calendar. I'll note that shortly when we conclude the argument in Wilmington Savings versus Bell Chu, we will recess briefly and reconvene in a new panel for a new day calendar. All right. Mr. Brigandi. Good afternoon, your honors. May it please the court. John Brigandi on behalf of the plaintiff appellant, Wilmington Savings. Wilmington Savings is appealing the district court's August 23rd, 2018 decision and order dismissing its foreclosure action as the lower court erred on two grounds. First, the extension and modification agreement here is an independent mortgage lien held against the property which may be foreclosed upon regardless of the status of the underlying notes and mortgages. And borrowers' obligations under the extension and modification agreement. Rather, the satisfaction of mortgages discharge their obligations solely under the first note, second note, third note, and the prior SEMA at issue here. Now, the trial court's reasoning overlooks the content of the extension and modification agreement itself, along with its consolidated note and provide that borrowers' obligations were being consolidated into one agreement, which specifically superseded all prior obligations set forth in the prior notes and mortgages. Where does it, I'm looking at the note, the agreement itself. Is this the, hang on a minute. I have the SEMA, but this is the extension and modification agreement, right? Yes, correct. That's an A200 in the appendix? I was looking at A77 in the appendix. Okay. Well, at least it begins on page 77. Because you're going to tell us exactly how this creates a new obligation. Yes, we could go through that page by page here. Yeah. I'm sorry, I don't want to interrupt you. Are we going to have to sort of pull together circumstantial evidence here, or is there something that says this? Yes. I know of nothing in here, at least you're going to enlighten me about that. Well, let's start with the consolidated note itself, which is page 80. Right on the top of page 80, the borrowers and the bank agreed that this note amends and restates in their entirety and is given in substitution for the notes described in Exhibit A of the consolidation extension and modification agreement. Now, the consolidated mortgage is consistent in this respect, in that it's superseding all prior mortgages. And if you go back, turning back, I'm sorry to go in reverse order here, but the first page of the extension and modification agreement says in paragraphs 2, or I should say sections 2, sections 3, and section 4, that it's restating and superseding all prior obligations owed by the borrowers here. So, in particular. So, what does that mean? Restating? And therefore, you want to know what the prior obligations are, you look to this. Exactly. You look to the extension and modification agreement. Right. But it doesn't say anything about creating a new obligation. It just says it's consolidating the prior ones, right? It's consolidating and superseding all the terms of the prior notes and mortgages. And I think it's important here to note that what this does. I thought that was just to sort of get them all in the same wavelength in terms of what the conditions of the loan were going to be. Well, what it actually does, it provides new obligations to the borrowers. For example, the interest rate was reduced. The monthly payment was reduced. And the maturity date was extended approximately just under two years. So, what this does is it provides new obligations for the borrowers, which they complied with for 11 years before defaulting on their payment obligations. I don't know whether that was the new ones or the old ones. No, we do know. There's no dispute that the borrowers made their payments in accordance with the terms of the extension and modification agreement from 2002 through 2013 when they defaulted. They would do that if the agreement just simply consolidated three notes into one and provided that instead you don't have to write, you don't have to make three separate payments. You just make one payment pursuant to this agreement. But what it actually does is it gives them a benefit here. Like I said, it reduces their unpaid principal balance. It reduces the interest rate. Because if you look at the interest rates of these particular notes that were... Was that reduced because they had paid it off? No, they had not paid off those prior notes in mortgages. So, at that point... Are you going to give me the reason then why they did that to reduce it? I don't know the specific reason. It's not part of the record, but typically in these situations it's done because either the borrower is in default or is about to go into default. And typically what happens in these situations is either the borrower or the banks approach the situation saying, what we need to do here is try and work something out to ensure that a default does not occur and that the borrowers can remain in the property and the bank has secured collateral. And if you... What I was going to say about these original notes, the first note had an interest rate of almost 9%. The second one of over 10%. The third one of 7.75%. And what this did was reduce those interest rates to 5.75%. They did receive a benefit here when they entered into this extension and modification agreement. There was No, I think what a big point we need to make here is that what the district court got incorrect was the concept of enforceability of the extension and modification agreement versus the priority of the extension and modification agreement. So, what the district court did was it determined that the SEMA is not the operative agreement was not a standalone independent loan obligation. And in doing so, it relied upon cases concerning the priority of mortgages. It did not rely upon cases regarding the enforceability of mortgages. And the cases that I cited in my brief and I had provided to this court subsequent to the party's submissions here demonstrate that the obligation that a bank is to foreclose upon is the extension and modification agreement. Or in those cases, it was the SEMA at issue. I know there's a slight difference between our extension and modification agreement and the SEMA's at issue there. But what all of them do is the same thing, is they consolidate all the is a starting point here is the Plotch case decided by this court on March 20th, approximately two weeks ago, which provides that the SEMA is the independent mortgage lien that must be enforced and foreclosed upon. That case further provides that when there are no intervening liens, the SEMA will remain as the first mortgage lien of Judge Lindsey in the Elliott case, which was another submission that I had made in, I believe, this case was decided in February of 2019. And she took it to the next step where she said, where there are intervening liens, each of the prior mortgages retain their independent lien significance or status, but solely for the purposes of determining priority. So what I'm seeking here is a bright line rule that the SEMA is the operative agreement to enforce and to foreclose upon in the state of New York. But when determining priority, the SEMA is the first mortgage of record only when there are no other intervening liens. If there are intervening liens, each of the prior mortgages retains their independent significance solely for the purpose of determining priority. I realize my time is up. Thank you, Mr. Brigandi. And we'll hear from Mr. Nelson. The sheet originally conveyed to us was incorrect. This is all inside baseball. Don't worry, Mr. Thank you very much. Thank you. Good afternoon. May it please the court. My name is Jonathan Nelson. I represent Defendant Appellee Louis Belchew. In the district court, Plaintiff Appellant argued that it should be permitted to expunge an erroneous satisfaction it itself filed 14 years ago, so that it could proceed to foreclose on a series of three mortgages. And having lost that argument because the statute of limitations had long run, Plaintiff Appellant now takes a different act. Did they ever amend the complaint? No, they didn't. I had thought about that as well during my preparations for oral argument. Judge Karras had given them, well, I should say they amended their complaint once, and this is the amendment. And Judge Karras gave them another opportunity to submit further argument and further reasons, and they declined to do so. So they did not actually move to amend another time. So just to, Plaintiff extended a mortgage in 1990, 91, 2000, and then the three mortgages were consolidated in 2000. Plaintiff filed a satisfaction of mortgage which discharged the 90, 91, and 2000 mortgage in the 2000 SEMA. So Plaintiff now has basically given up the argument, it would seem, that it should be allowed to expunge the satisfaction. So those mortgages in the SEMA are canceled and discharged of record. Is this argument being made here for the first time? I believe it is, yes. At the court below, my motion was based solely on the statute of limitations argument to expunge the satisfaction. And as the statute of limitations had long expired, that was the only argument. So yes, it is the first argument. This court addressed this issue before. This court has addressed it in Nucci v. PHH Mortgage Corp. when it affirmed the lower court's holding. The lower court said a consolidation agreement combining multiple outstanding mortgages into a single lien is not considered a new mortgage where no new money is included in the consolidation. The court also stated, quote, a new mortgage is deemed to be created if the consolidation creates a new lien upon property not originally covered by the prior instruments. This court stated in its affirmation, quote, in any event, the consolidated mortgage does not represent an encumbrance independent from the two prior and undisputed mortgages it consolidates. Doesn't that all depend on the language of the agreement? No, I don't think it does, Your Honor, respectfully, because New York has long held, long, long since held, that a consolidation extension modification agreement is a tool, not a new lien. It doesn't create a new lien. It simply consolidates for the convenience of the borrower and the lender. Primarily, I think it's to avoid paying extra mortgage tax, but that's my surmise. But the state of New York has long held that it is not an independent lien, and this court has held, too. I don't think that this court's ruling in Plotch v. Wells Fargo changes that. I don't think there's any conflict. I know the court is aware that in Plotch, Adam Plotch bought a condominium unit in a condominium foreclosure on a common charge, on common charge foreclosure. We all know that New York Real Property Law 339Z says that that foreclosure is going to foreclose everything except a first mortgage. So the issue before this court was whether or not a consolidated mortgage constituted a first mortgage under that statute, and this court said, look, absent any intervening liens, of course it does. But what this court did not say, and I know no court that did say, that says when the component parts of a CEMA or an EMA have been satisfied that you can foreclose. Think about the ramifications for a moment of that proposition. Let's say I borrowed $100 in 2001 and $100 in 2002, and then in 2002 they were consolidated. But in 2003, I paid the first mortgage of $100 in full. It was satisfied. The first mortgage was canceled and discharged of record. According to plaintiff, because the debts were consolidated, it should be able to go after the full 200 simply because they were consolidated, notwithstanding that the first mortgage was canceled and discharged of record. It's like borrowing the same dollar twice, right, once for the underlying mortgage and again for the CEMA. Let's go a step further. Let's say I paid off both mortgages, $200. I paid off the first and the second, and there was a satisfaction issued, but the satisfaction didn't say it is actually satisfying the CEMA. What plaintiff is asserting is that it would be able to foreclose on the CEMA because even though the underlying debts were canceled and discharged, the CEMA wasn't mentioned in the satisfaction. And that's exactly what they're trying to do here. Remember. You're saying that suppose that the case had gone on, your clients were still paying the mortgage off, paying their debts and so forth. If they'd satisfied the first three mortgages, actually satisfied them, and they got a satisfaction from the bank, at that point, that the bank still would have a cause of action under his theory. So it would seem. If the EMA, extension modification agreement. Creates a new obligation. And then it's like I said, it's like borrowing the same dollar twice, and what a feat indeed that would be for a bank to do. Recall New York law says that the satisfaction is prima facie evidence of payment. It's done. They're canceled and discharged. We all know now that they can't expunge that cancellation and discharge. As they stand now, for the sake of this case, those liens, the first, second, third mortgage and the CEMA, stand canceled and discharged. What the plaintiff is asking, pursuant to your Honor's question, is allow us to foreclose on the EMA. But it's like taking money out of an empty bank account. I think now I'm at risk of repeating myself, so unless there are any further questions, I'll rely on my brief. Briefly in rebuttal, what I would like to touch upon is that this issue was raised before the district court. In fact, Judge Karas, in his decision and at oral argument, had discussed the issue as to whether, using the examples about lending of various different notes, and discussed that. Ultimately, Judge Karas held that the extension and modification agreement was not a stand-alone independent lien or mortgage obligation. He was discussing a lot of things, trying to understand the case, but it was all in the context of the complaint that you had filed. Right, and the complaint- Which did not allege the claim that you're making now. I would suggest that it does, and it did so in paragraphs 10, 11, 12E, 13, and 17, all of which would be found on appendix pages 12 through 14. Now, while it didn't explicitly state plaintiff is foreclosing upon the extension and modification agreement separate and apart from first note, second note, third note, and SEMA. It did specifically provide that the borrowers defaulted on their payment obligations under the mortgage loans, including the extension and modification agreement, and that there remained a principal balance of just under $170,000 at that time. Unless your honors have any further questions, I'll rely upon my briefs. Thank you very much. We'll reserve decision, and as I indicated earlier, we will recess briefly and reconvene in a few minutes. Court is adjourned.